UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARY OESER,

      **Plaintiff,**

      v.

ANDREW SAUL,
**Commissioner of Social Security,**

      **Defendant.**

Case No. 1:19-cv-16286
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Mary Oeser for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

## I.    PROCEDURAL HISTORY

On July 1, 2015, Plaintiff filed her application for benefits, alleging that she has been disabled since July 7, 2009. R. 166–67. The application was denied initially and upon reconsideration. R. 87–91, 93–98. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 99–100. Administrative Law Judge Nancy Lisewski ("ALJ") held a hearing on June 11, 2018, at which Plaintiff, who was represented by counsel, appeared and testified, as did

1

a vocational expert. R. 38–63. In a decision dated August 15, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 7, 2009, her alleged disability onset date, through June 30, 2015, the date on which Plaintiff was last insured for disability insurance benefits. R. 18–25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 3, 2019. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 21, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 17.[1] On that same day, the case was reassigned to the undersigned. ECF No. 18. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at \*4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

4

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

6

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 7, 2009, her alleged disability onset date, and June 30, 2015, the date on which she was last insured. R. 20.

At step two, the ALJ found that Plaintiff did not have a severe impairment or combination of impairments. R. 21–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 7, 2009, her alleged disability onset date, through June 30, 2015, her date last insured. R. 25.

Plaintiff disagrees with the ALJ's findings at step two and asks that the decision of the Commissioner be reversed and remanded for further proceeding. *Plaintiff's Brief*, ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 16. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 13.

## IV. SUMMARY OF RELEVANT INFORMATION

On August 10, 2015, Patrick J. Arnold, D.C., Plaintiff's treating chiropractor, completed a fill-in-the-blank and check-the-box form entitled "General Medical Report." R. 297–99. The chiropractor indicated that he first examined Plaintiff in November 1999 and that he continued to see her once every six to eight weeks since that time, having most recently examined her in

July 2015. R. 297. The chiropractor noted an ongoing history of neck, middle back, and lower back pain and his physical findings included palpatory findings of muscle tightness and tenderness in the cervical, thoracic, and lumbar spines. *Id.* He reported that cervical and lumbar x-rays from March 11, 2015, revealed, *inter alia*, advanced degenerative changes in the cervical spine with reversal of the normal lordotic curve in the lateral view and moderate degenerative spondylosis in the lumbar spine with right lumbar curvature. *Id*. Dr. Arnold diagnosed cervical disc degeneration, lumbar disc degeneration, neck pain, low back pain, and subluxation of the cervical, thoracic, and lumbar spine. *Id*. In response to the question whether he could provide, based on his medical findings, his medical opinion regarding Plaintiff's ability to engage in work related activities, Dr. Arnold checked the box marked "No." R. 298.

On July 5, 2018, the chiropractor completed a fill-in-the-blank and check-the-box form entitled "Medical Assessment RFC Form," R. 328–31, indicating that the information in the form related to treatment between 2009 to July 2018. R. 328. According to Dr. Arnold, Plaintiff could, in an eight-hour day, continuously sit for one hour, stand for five minutes, and walk for one hour. *Id*. Plaintiff could occasionally lift and carry up to ten pounds, but could never lift or carry twenty pounds. *Id*. Plaintiff could occasionally bend, climb steps, kneel, and crawl, but could never stoop or crouch. *Id*. Plaintiff's abilities to handle (gross manipulation), finger (fine manipulation), and push/pull were also affected by her impairments, but her abilities to reach (including overhead) and feel were not affected. *Id*. According to Dr. Arnold, Plaintiff could grasp with either hand, but was incapable of fine manipulation with either hand and could not push or pull with either leg. R. 329. Dr. Arnold reported that Plaintiff had pain while sitting and that she needed to alternate between sitting and standing every ten to fifteen minutes; however, she did not need a cane or other assistive device while engaging in

occasional standing/walking. *Id*. Dr. Arnold also reported that Plaintiff had pain in her upper extremities, and numbness in her hands, wrists, fingers, and she had trouble gripping and grasping objects; however, she did not drop things due to pain and numbness in her upper extremities and did not experience tremors. *Id*. Plaintiff frequently experienced symptoms severe enough to interfere with her attention and concentration. *Id*. Dr. Arnold reported no side effects from medication, but he opined that Plaintiff's impairments would likely produce "good days" and "bad days." *Id*. Dr. Arnold also opined that Plaintiff was "disabled at this time," although he did not indicate when her symptoms began. R. 330. Dr. Arnold noted that Plaintiff has "constant pain which forces her to take Advil on a regular basis. Walking causes her hips to ache. Standing causes [lower back pain]. Sitting causes swelling in her legs." *Id*. When asked to include any additional comments to describe any other limitations that would affect Plaintiff's ability to work at a regular job on a sustained basis, Dr. Arnold responded that sitting for any length of time greater than twenty to thirty minutes causes swelling in her legs requires her to elevate her legs above her heart; standing longer than twenty minutes causes lower back pain; and she has advanced degenerative disease in her lower back. *Id*. At the bottom of the page, under his signature block, Dr. Arnold also noted as follows: "Cancer surgery 2001 – to remove lymph nodes from vulvar cancer the year before (2000). After the second surgery she progressively got worse with the swelling in her left leg. [T]o reduce that swelling now she must elevate her leg above her heart." *Id*.

## V. DISCUSSION

Plaintiff contends that the ALJ erred when she denied Plaintiff's claim at step two of the sequential evaluation by finding no severe impairments. *Plaintiff's Brief*, ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 16. Plaintiff specifically argues that the ALJ applied the incorrect legal

9

standard at step two, erred in considering the opinions of Dr. Arnold, her treating chiropractor, erred in assessing the lay opinions of her husband, Richard Oeser, and erred in evaluating Plaintiff's subjective complaints. *Id.* The Commissioner disagrees, arguing that substantial evidence supports the ALJ's denial of benefits at step two of the sequential evaluation process. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13.

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Therefore, "[t]he burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, 1985 WL 56856, at *3; citing *Newell*, 347 F.3d at 546). Courts must resolve any doubt as to whether this showing has been made in favor of the claimant. *Id.*; *see also Newell*, 347 F.3d at 547. While a reviewing court should not apply a more stringent standard of review when the Commissioner denies benefits at step two, "its invocation is certain to raise a judicial eyebrow" because "step two is to be rarely utilized as a basis for the denial of benefits[.]" *McCrea*, 370 F.3d at 361.

Here, Plaintiff complains that the ALJ applied the incorrect standard of review at step two of the sequential evaluation. *Plaintiff's Brief*, ECF No. 12, pp. 11–15; *Plaintiff's Reply Brief*, ECF No. 16, pp. 1–5. This Court agrees. Although the ALJ recited that "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no

10

more than a minimal effect on an individual's ability to work[,]" R. 19 (citing 20 C.F.R. § 404.1522; SSR 85-28 and 16-3p), the ALJ did not actually apply this *de minimis* screening standard when discounting Dr. Arnold's opinions and finding Plaintiff's impairments to be non-severe at step two. Objective medical evidence supported Plaintiff's subjective claims of impairment and the opinions of Dr. Arnold, including the March 2015 x-rays of the cervical and lumbar spine, which revealed "*advanced degenerative changes in the cervical spine*" with reversal of the normal lordotic curve and moderate degenerative spondylosis in the lumbar spine with right lumbar curvature. R. 297 (emphasis added). Plaintiff also received care from her chiropractor every six to eight weeks from April 2011 forward, and she took Advil on a regular basis to relieve her pain. R. 297, 330. The parties agree that Dr. Arnold, a chiropractor, is not an "acceptable medical source." *See Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999) (citations omitted); 20 C.F.R. § 404.1513(a). Although evidence from an "other source," such as a chiropractor, cannot be used to establish an impairment, 20 C.F.R. § 404.1513(a), such evidence can be used to show the severity of a claimant's impairment and how that impairment affects the claimant's ability to work, *id.* at § 404.1513(d)(1); *see also* SSR 06-3p (stating that opinions from "other sources" therefore "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file" and that "the Act requires us to consider all of the available evidence in the individual's case record in every case").

Notably, in this case, the ALJ found that Plaintiff in fact suffered medically determinable impairments, including disorders of the cervical and lumbar spine. R. 21. The information provided by Dr. Arnold was therefore admissible to show the severity of these impairments. Moreover, the ALJ specifically found that Plaintiff's impairments "*could have been reasonably*

*expected to produce the alleged symptoms*[.]" R. 23 (emphasis added). The ALJ acknowledged this objective medical evidence, but she "minimized their import" at step two. *See McCrea*, 370 F.3d at 361. The ALJ focused on Plaintiff's treatment history, characterizing her treatment as "limited, conservative care" and observing that Plaintiff "has not required emergency room treatment or hospitalization for exacerbation of her symptoms during the period at issue." R. 23–24. Relying on this conservative treatment, the ALJ appears to have imported to step two the analysis appropriate at later stages of the sequential evaluation:

> *The course of treatment does not support the claimant's allegation of disability.* As noted above, the record shows that the claimant has had limited, conservative care consisting of only chiropractic treatments. She has not required emergency room treatment or hospitalization for exacerbation of her symptoms during the period at issue.

R. 24 (emphasis added).

A similar conflation of analyses resulted in the remand of the action in *McCrea*, 370 F.3d at 362. In that case, the ALJ found that x-ray and MRI evidence revealed only "small" or "mild" abnormalities, that complaints of pain were treated with over the counter non-steroidal anti-inflammatory medications, and that an opinion as to limited physical functioning was entitled to no significant weight because that opinion was "inconsistent with the medical evidence and conservative treatment strategies detailed in the record." *Id*. The United States Court of Appeals for the Third Circuit concluded that "[w]e need not concern ourselves with this reasoning at length. Although the observations made by the ALJ may or may not be relevant *in later steps of the sequential analysis . . . they certainly do not carry the day at step two*." *Id*. (citations omitted) (emphasis added); *see also Magwood v. Comm'r of Soc. Sec.*, 417 F. App'x 130, 132–33 (3d Cir. 2008) ("In this case, the ALJ ignored *McCrea*'s instruction by weighing the medical evidence adduced by Magwood, including the opinion from her treating psychiatrist, against the

12

consultative examination of a psychologist and a consultative review of a psychiatrist. This was error.") (citations omitted). In both *McCrea* and *Magwood,* the Third Circuit concluded that the claimants' conditions were sufficiently "severe" under the *de minimis* step two standard to warrant further consideration of the sequential evaluation process. *McCrea*, 370 F.3d at 362; *Magwood*, 417 F. App'x at 132–33.

The record in this action includes objective x-ray evidence of medically determinable impairments which, as the ALJ expressly found, "*could have been reasonably expected to produce the alleged symptoms*[,]" R. 23 (emphasis added), as well as the treating chiropractor's assessment of Plaintiff's functional limitations. In light of this evidence, the Court cannot agree that the ALJ applied the proper *de minimis* standard at step two of the sequential evaluation process in finding that Plaintiff's claim is "groundless" and that her claim to disability benefits should be denied at step two. Moreover, this Court cannot find that this error at step two was harmless where, as a result, the ALJ failed to fully consider Plaintiff's allegations of disability. *See Sherrard v. Saul*, No. 3:18-CV-01590, 2019 WL 4254134, at *7 (M.D. Pa. Aug. 12, 2019), *report and recommendation adopted*, No. 3:18-CV-1590, 2019 WL 4256282 (M.D. Pa. Sept. 6, 2019) ("Additionally, the finding that all of Sherrard's alleged impairments were either non-medically determinable or non-severe cannot be deemed harmless error in this case. Indeed, had Sherrard credited Dr. Kanouse's opinion or otherwise found in his favor at step two, the evaluation of his DIB claim may have resulted in a different outcome.").

For all these reasons, the ALJ's denial of benefits at step two warrants remand in this case.[2]

---

[2] Plaintiff asserts a number of other errors in the Commissioner's final decision denying benefits at step two of the sequential evaluation. Because the Court concludes that the matter must be remanded for further consideration of step two, the Court does not consider those claims.

## VI. CONCLUSION

The Court therefore **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date: May 18, 2021

*s/Norah McCann King*
NORAH McCANN KING
UNITED STATES MAGISTRATE JUDGE